IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 22-cr-00212-RMR

**UNITED STATES OF AMERICA**

      Plaintiff(s),

v.

1.    **JOSEPH EUGENE CLEMENTS,**

      Defendant(s).

---

**PLEA AGREEMENT**

---

The United States of America (the government), by and through Timothy J. Forwood, Assistant United States Attorney for the District of Wyoming, and the defendant, JOSEPH EUGENE CLEMENTS, personally and by counsel, Lisa A. Polansky submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I. AGREEMENT

The defendant agrees to plead guilty to Counts One and Five as charged in the Indictment. Count One alleges Conspiracy to Distribute N,N-Dimethyltryptamine ("DMT"), in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C). Count Five alleges Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

The Defendant is aware of the advisory Sentencing Guidelines and their potential impact on his sentence. The Defendant understands that the court must consider, but is not bound by, the Guidelines in determining the appropriate sentence under 18 U.S.C. § 3553(a).

**COURT EXHIBIT 1**

Based on currently available information, and pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the United States agrees to recommend that the Defendant's controlled substance quantity of N,N-Dimethyltryptamine ("DMT") be calculated at 0.9% of the total relevant conduct weight. This conversion is based on studies by the United States Department of Justice, Drug Enforcement Administration quantitative analysis of DMT from powdered bark form.[1] The Defendant understands the agreement in this paragraph does not bind the court, and the court's rejection of the agreement in this paragraph would not permit the Defendant to withdraw his plea(s).

Subject to the conditions in USSG §3E1.1(a), the associated commentary, and any other applicable provision under the Guidelines, the United States agrees to recommend the Defendant receive a two-offense-level reduction for acceptance of responsibility. If the Defendant is eligible, subject to the conditions in §3E1.1(b), the associated commentary, and any other applicable provision under the Guidelines, the United States agrees to recommend an additional one-level reduction.

The defendant admits the forfeiture allegations. Specifically, the defendant agrees to the forfeiture of $5,100.00 in United States currency; $16,924.00 in United States currency; $24,260.00 in United States Currency; and 2.98 EA SOLANA Cryptocurrency valued at $95.33, all seized from the defendant. The defendant agrees and consents to the forfeiture of these specific assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The United States agrees to return the EA Tesla Model 3 (VIN 5YJ3E1EC6MR997228), seized from the defendant.

---

[1] https://erowid.org/library/periodicals/microgram/microgram_journal_2007-1.pdf

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

The Defendant understands he has the right to appear in person before the court with his attorney for his change-of-plea hearing and sentencing hearing. However, if the court were to conduct the Defendant's change-of-plea hearing or sentencing hearing by video-teleconferencing ("VTC") with the Defendant's consent, the Defendant agrees he would waive any future right to appeal or collaterally attack his conviction or sentence based on any argument that the court should have held the hearing(s) in person instead, except an argument based on ineffective assistance of counsel.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence (including the restitution order), unless it meets one of the following criteria:

a. the sentence exceeds the maximum sentence provided in the statute of conviction, 21 U.S.C. § 843(b)

b. the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 24; or

c. the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

a.  the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

b.  the defendant was deprived of the effective assistance of counsel; or

c.  the defendant was prejudiced by prosecutorial misconduct.

The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18

U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied §3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its§ 3553(a) analysis.

## II. ELEMENTS OF THE OFFENSE(S)

The parties agree that the elements of the offense[s] to which this plea is being tendered are as follows:

### COUNT ONE

a. Two or more persons agreed to violate the federal drug laws, specifically to possess with intent to distribute DMT;

b. The defendant knew the essential objective of the conspiracy;

c. The defendant knowingly and voluntarily involved himself in the conspiracy; and

d. There was interdependence among the members of the conspiracy, which means that the members intended to act for their shared mutual benefit. Put another way, the jury must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

In violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C).

### COUNT FIVE

a. The defendant conducted a financial transaction;

b. The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;

c. The financial transaction involved the proceeds of specified unlawful activity; and

d. The defendant conducted the financial transaction with the intent to promote the carrying on of the specified unlawful activity(drug trafficking)

In violation of 18 U.S.C. § 1956(a)(1)(A)(i)

5

## III. **STATUTORY PENALTIES**

Count One, which alleges Conspiracy to Distribute N,N-Dimethyltryptamine ("DMT"), in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(C). In addition to restitution (if applicable), this offense carries the following statutory penalties:

> 0-20 YEARS IMPRISONMENT
>
> UP TO $1,000,000 FINE
>
> 3 YEARS TO LIFE SUPERVISED RELEASE
>
> $100 SPECIAL ASSESSMENT

Count Five, which alleges Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). In addition to restitution (if applicable), this offense carries the following statutory penalties:

> 0-20 YEARS IMPRISONMENT
>
> FINE OF $500,000 OR TWICE THE VALUE OF THE PROPERTY INVOLVED IN THE TRANSACTION WHICHEVER IS GREATER
>
> UP TO 3 YEARS SUPERVISED RELEASE
>
> $100 SPECIAL ASSESSMENT

The Court will impose a separate sentence on each count of conviction and may, to the extent permitted by law, impose such sentences either concurrently with or consecutively to each other.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. STIPULATION OF FACTS

The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from presenting non-contradictor additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties stipulate that the following facts are true and correct:

a. Joseph Clements also goes by the name "Akasha Song" and was referred to as Akasha Song throughout the conspiracy.

b. Associates and unnamed coconspirators of Clements operated a darknet vendor called Shimshai. Transactions conducted on Shimshai were transferred into a BitPay wallet controlled by Clements.

c. On March 16, 2021, Clements loaded $1,000, $2,000, and $3,000 worth of bitcoin into his BitPay account. These transactions were proceeds from the sale of controlled substances. Moments after the transactions above,

7

<ul>
<li>Clements used his BitPay account to spend $4,771.85 at the USPS.com postal store.</li>
</ul>

d. Shimshai used the United States Postal Service (USPS) to ship N,N-Dimethyltryptamine ("DMT") to customers, as seen in a controlled purchase in April 2022.

e. In September 2021, United States Customs and Border Protection (CBP), inspected a FedEx package destined for Brooklyn, NY that contained a brownish red shredded wood-like substance, that yielded a presumptive positive result for DMT. The total drug shipment weighed approximately 104.35 kilograms and was seized by CBP and transferred to Homeland Security Investigations (HSI). The phone number attached to the destination address returned to Joseph Clements.

f. In April 2022, HSI made an undercover purchase of 3.5grams of DMT from darknet market vendor, "Shimshai." The package was shipped using the United States Postal Service to an HSI Postal Box in Colorado. The return label on the package showed an address in Boulder, Colorado. Shimshai then shipped 4.17 grams of DMT to the HSI Postal Box.

g. On April 14, 2022, HSI Houston was notified about a shipment of nine packages from Brazil containing 191.55 kilograms of DMT destined for a residence in La Porte, TX, was intercepted by CBP at the Memphis International Mail Facility. The shipment was addressed to "AKASHA, RAW BRAZIL COSMETICS."

h.  On April 15, 2022, HSI agents spoke with an individual (Individual-1) at the destination address in Texas, and stated she was paid to receive packages for Clements. Individual-1 also stated that William Blake Plsek had picked up several similar packages over the last year. Individual-1 communicated with Plsek via texting and other messaging apps in reference to Plsek picking up the previous packages on behalf of Clements.

i.  On April 25, 2022, Individual-1 called Clements via the Telegram mobile application at the direction of law enforcement. Individual-1 informed Clements that several FedEx boxes had been delivered to her home. Clements expressed surprise that parcels had arrived and stated that they were a "replacement" for the "shit that landed." Clements told Individual-1 that he would arrange for their pickup and payment to Individual-1 right away.

j.  Just after this conversation, Plsek was observed accessing a vehicle outside his residence in Texas, and approximately 22 minutes later, departed enroute to Individual-1's residence. Plsek was observed speaking on the phone while operating the vehicle.

k.  HSI Houston left the drug-laden packages on the front porch area of the address of Individual-1. One of the packages contained approximately 21 kilograms of the originally packaged DMT and the other eight packages contained simulated controlled substance. Plsek then parked in Individual-1's driveway and loaded all nine packages into his van and left.

l.  Houston Police officers conducted a traffic stop of Plsek just after he left the residence. Plsek consented to the officers searching his car and the packages were discovered inside as well as a cell phone.

m.  Plsek stated that he picked up the boxes for "Akasha," but stated Akasha was a female.

n.  A subsequent search of Plsek's phone showed that Clements directed Plesk to Individual-1's home on April 25, 2022 to pick up the DMT.

o.  After Plsek was contacted by law enforcement, Individual-1 contacted Clements at law enforcement's request. Individual-1 asked Clements why the cops were at the house. Clements stated, "if they know that we're making it, that's not – what – is not legal. The bark itself is legal." He later advised Individual-1 to delete all of her communications with him. Clements later on again said that the bark is legal, but what can be done with it is illegal. Additionally, Clements explained that the "place where it's made is at Blake's [Plesk], he could go down for this . . . if they followed him to his house. . . .They may have followed him to his house and discovered the whole thing."

p.  Later that day, HSI agents accessed the Shimshai vendor page, and the page stated it was in "vacation mode."

## VI. ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range

10

computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

    a. For the Count 1, the Guideline applicable to 21 U.S.C. § 841(A) is U.S.S.G. §2D1.6, which points to U.S.S.G. § 2D1.1.

    b. Approximately 300 kilograms of N,N-Dimethyltryptamine ("DMT") was seized during the investigation. However, the 300 kilograms of DMT was in a powder form. Previous studies have shown that this powder form contains approximately 0.9% of DMT. Thus, at a 0.9% conversion rate, the defendant was responsible for approximately 3,000 grams of DMT. Pursuant to U.S.S.G. § 2D1.1(c)(8), the base offense level is **24**.

    c. For Count 5, a conviction under 18 U.S.C. § 1956(a)(1)(A)(i) results in a **two**-level increase, pursuant to U.S.S.G. § 2S1.1(b)(2)(B).

    d. Pursuant to U.S.S.G. § 2D1.1 (b)(18), because the defendant meets the criteria in U.S.S.G. § 5C1.2(a), **two** levels are subtracted.

    e. The adjusted offense level is **24**.

    f. Because the defendant demonstrated acceptance of responsibility in a timely manner, **three** levels are subtracted pursuant to U.S.S.G. § 3E1.1 (a) and (b). The resulting total offense level is **21**.

    g. The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in **criminal history category I**.

    h. The career offender/criminal livelihood/armed career criminal adjustments do not apply.

    i. The advisory guideline range resulting from these calculations is **37-46 months**. The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. §3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. §3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less

than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. §3553 factor.

## VII. ENTIRE AGREEMENT

This document states the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 11/22/22

JOSEPH EUGENE CLEMENTS
Defendant

Date: 11/22/22

LISA A. POLANSKY
Attorney for Defendant

Date: 11/22/22

TIMOTHY J. FORWOOD
Assistant United States Attorney
District of Wyoming
Acting Under Authority Conferred by 28 U.S.C. § 515

13