IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 22-cr-212-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM BLAKE PLSEK,

    Defendant.
_____

**DEFENDANT WILIAM PLSEK'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**
_____

Pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure, defendant William Plsek, through counsel, hereby submits the following objections to the draft Presentence Investigation Report ("PSR") filed on January 4, 2023 (Doc. #63).

**I.     Objection to Drug Quantity**

Mr. Plsek objects to the Probation Department's calculation of the drug quantity which results in a base offense level of 33. Note A to the Drug Quantity Table at Section 2D1.1(a) of the United States Sentencing Guidelines states that "**unless otherwise specified**, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." (Emphasis added). In this case, the government specified its agreement to recommend the drug quantity be calculated at 0.9 percent of the total relevant conduct weight based on the studies by the United States Department of Justice, Drug

Enforcement Administration qualitative analysis of DMT. *See* www.dea.gov/programs/forensicsci/microgram/index.html. Because the plea agreement specifies a different quantity calculation based on studies by the United States Department of Justice, the Court should reject Probation's calculation and adopt the calculation of the parties. Utilizing the science that supports the .9 percent conversion, the parties estimated the base offense level of 24. Mr. Plsek requests that the Court adopt the parties' base offense level of 24, not 33.

In addition, Application Note Number 1 at Section 2D1.1 of the United States Sentencing Guidelines indicates:

> "Mixture or substance" does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in cocaine/beeswax statute, and waste water from an illicit laboratory used to manufacture a controlled substance. If such material cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to approximate the weight of the mixture or substance to be counted.

The government has proposed a reasonable method based on the United States Department of Justice, Drug Enforcement Administration to approximate the weight of the DMT in this case. What was seized was "a brownish red shredded wood-like substance." PSR at page 5, paragraph 8e. The wood-like substance on its own is not what is ultimately consumed by a person desiring to use DMT. According to the Drug Enforcement Administration Diversion Control Division Drug and Chemical Evaluation Section, "DMT is usually snorted, smoked or injected because the oral bioavailability of DMT is very poor unless it is combined with a substance that inhibits its metabolism." *See* DEA Report

Attached as Exhibit "A." In other words, the bark is not eaten on its own but is treated with solvents and processed into a crystal like-substance. *See* PSR pages 7-8, paragraph 20.

The government agrees that the bark recovered by agents in this case would be subjected to an extraction process to obtain useable DMT. The bark, which cannot be readily separated from the extracted DMT, is unusable waste product. As such, according to the application note, the Court may use the reasonable method the parties have proposed to approximate the weight of the useable DMT in this case. In this case, the government, who bears the burden of establishing a drug quantity when it is challenged, agrees that the substance seized should be calculated at a 0.9 percent conversion. Therefore, the Court should adopt the parties' reasonable method to approximate the weight of the DMT.

Like another hallucinogenic substance, LSD, the substance seized in this case far exceeds the weight of the controlled substance itself. LSD is often put on a carrier medium of blotter paper which cannot be readily separated from the LSD. The Mimosa Hostilis bark in this case is similar to blotter paper in that it cannot be readily separated from the controlled substance. Note G to the Drug Quantity Table at Section 2D1.1(a) of the United States Sentencing Guidelines, which addresses LSD on a carrier medium like a sheet of blotter paper instructs: "do not use the weight of the LSD/carrier medium." Basing the offense levels on the entire weight, in this case the bark, produces an inaccurate quantity of the actual controlled substance.

### II. Objection to Application of Specific Offense Characteristic § 2D1.1(b)(7)

Neither the government nor Mr. Plsek anticipated the application of Section 2D1.1(b)(7), which is referenced in the PSR on page 9 at paragraph 27. This guideline states, "If the defendant, or a person for whose conduct the defendant is accountable under §1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service, increase by 2 levels." Mr. Plsek is not accountable under §1B1.3 as he did not jointly undertake or agree that DMT would be mass-marketed by means of an interactive computer service.

Mr. Plsek is not accountable under §1B1.3, as there is no information establishing that Mr. Plsek was involved in mass-marketing by means of a computer service or that he jointly agreed to undertake distributing DMT by mass-marketing. The undisputed information in this case is that Mr. Plsek was working at the direction of Mr. Clements to pick up the packages containing DMT. PSIR, page 9, paragraph 30. Probation states, "There is no information to indicate that the defendant accessed the vendor page, assisted in any marketing, or recruited customers." *Id.* Unlike Mr. Clements, Mr. Plsek was not indicted with money laundering. Probation further admits that it is unclear that Mr. Plsek understood the entire scope of the conspiracy. *Id.*

According to the Guidelines, "the scope of the 'jointly undertaken criminal activity' is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant." USSG § 1B1.3, comment. (n.1). Therefore, "the court must first determine the scope of the criminal

4

activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement)." *Id*. "Proper attribution at sentencing requires the district court to analyze, and make particularized findings about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole." *United States v. Melton*, 131 F.3d 1400, 1404 (10th Cir.1997) (internal quotation marks omitted). Accurately determining the scope is critical because "a defendant's accountability only extends to the criminal activity that he agreed to undertake." *United States v. Dazey*, 403 F.3d 1147, 1176 (10th Cir. 2005). As there is no evidence that Mr. Plsek agreed to jointly undertake the criminal activity that involved distribution of a controlled substance through the mass marketing by means of an interactive computer service, the § 2D1.1(b)(7) enhancement should not be applied.

III. **Objection to Additional Information Contained in Paragraph 14**

Mr. Plsek objects to the last sentence of the "Additional Information" contained in Paragraph 14 of the PSIR which indicates that a BitPay debit card transactions showing Clements and Plsek moved approximately $641,298.10 in bitcoin through their account since January of 2018.

Federal Rule of Criminal Procedure 32(i)(3) governs the district court's use of a PSR in establishing the facts relevant to sentencing. It states:

> At sentencing, the court: (A) may accept any undisputed portion of the presentence report as a finding of fact; [and] (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter

will not affect sentencing, or because the court will not consider the matter in sentencing ....

Mr. Plsek denies that he was involved with these BitPay debit card transactions starting in January 2018 or that there is sufficient information of such. While Mr. Clements paid Mr. Plsek into his bitcoin wallet, Mr. Plsek was not involved with purchasing Mimosa Holistic, or selling the finished DMT product. Mr. Plsek requests that the Court either rule on the dispute or determine that a ruling is unnecessary because the matter will not affect sentencing, or the court will not consider the matter at sentencing.

Respectfully submitted,

s/ *Dru Nielsen*
Dru Nielsen, No. #28775
Haddon, Morgan and Foreman, P.C.
950 17th Street, Suite 1000
Denver, CO 80202
Phone:303.831.7364
Fax: 303.832.2628
Email: dnielsen@hmflaw.com

Attorney for William Blake Plsek

**CERTIFICATE OF SERVICE**

I hereby certify that on 1/18/2023, I electronically filed the foregoing *Defendant William Plesk's Objections to the Presentence Investigation Report* the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

s/ *Savanna Benninger*